WILL OF HALL: HARRINGTON and others, Respondents, vs. HALL, Appellant.

*January 8—April 30, 1918.*

*Wills: Execution: Evidence: Presumption from recitals in attestation clause.*

The presumption arising from recitals in the attestation clause showing due execution of a will is *held* in this case to have been overcome by the evidence, which supports the findings of the county and circuit courts that the will was not properly executed.

APPEAL from a judgment of the circuit court for Brown county: HENRY GRAASS, Circuit Judge.    *Affirmed.*

The appeal is from a judgment denying probate of the alleged will of Eliza J. Hall, deceased.    Eliza J. Hall died in 1914 at the age of eighty-nine years, and the alleged will propounded was executed about a year before her death.    For a period of about eight years before her death she was blind or partially so.    Her signature to the will was written by one Whitenack, with her mark attached thereto.    The witnesses to the attestation clause are Anton Fay and Nora Elkey.    At the end of the instrument this appears: "Signed and witnessed in my presence this 9th day of May, 1913.    J. T. Whitenack, Notary Public."

The objections to the probate of the will were (1) that it

was not executed as provided by law; (2) undue influence; (3) mental incompetency. The second and third objections were not seriously relied upon at the trial.

The county court held that the will was not properly executed and hence was not the will of Eliza J. Hall, and denied probate thereto. On appeal the circuit court affirmed the judgment of the county court. Both the county court and the circuit court wrote lengthy opinions discussing the material questions involved, including the evidence produced, which opinions are in the record. From the judgment of the circuit court this appeal was taken.

*C. W. Lomas* of Green Bay, for the appellant.

For the respondents there was a brief by *Sheridan, Evans & Merrill* of Green Bay, and oral argument by *Philip Sheridan.*

The following opinion was filed February 5, 1918:

KERWIN, J. The main contention on the part of appellant is that the presumption of the attestation clause should support the will.

The will purports to have been executed May 9, 1913, and is substantially in due form. The appellant is named as executor. After the formal attestation clause appears the following: "She making her mark because of failure of her eyesight." There is evidence tending to show that the will was not duly executed and was not in fact the will of Mrs. Hall, the alleged testatrix. The alleged will gives the principal part of the estate of the testatrix to her son, *William A. Hall,* appellant, who had lived with testatrix for many years before her death and was her confidential adviser. Small bequests of $50 each were given to four grandchildren. The court below found, among other things, that on May 9, 1913, Eliza J. Hall, the alleged testatrix, was blind and had been for a number of years prior thereto; that the proposed instrument was in the handwriting of *William A. Hall,* the

appellant, and originally, as drawn, blanks for inserting the month in the date of the will and attesting clause were once filled in and erased and the word "May" inserted in the hand-writing of appellant. Blanks were also left in the fifth, sixth, seventh, and eighth bequests to grandchildren, and the word "fifty" inserted in each in the handwriting of appellant; that Eliza J. Hall did not sign the proposed instrument in the presence of Anton Fay, Nora Elkey, or J. T. Whitenack as attesting witnesses; that there was no publication of the proposed instrument either at or before the witnesses signed, and deceased did not have full knowledge of the contents of the instrument propounded; that the word "fifty" was inserted in clauses 5, 6, 7, and 8 of said proposed instrument in the handwriting of appellant after the signing by the witnesses Fay, Elkey, and Whitenack and after the affixing of the signature of Eliza J. Hall and without the knowledge, instruction, or will of said Eliza J. Hall.

And the court concluded that the proposed instrument was not signed, sealed, published, and declared by Eliza J. Hall as her last will in presence of two competent witnesses who subscribed to the same as attesting witnesses in her presence. and in the presence of each other; that the proposed instrument was not the will of Eliza J. Hall, deceased.

The appellant lived with his mother, Eliza J. Hall, for many years before her death and had during such time received considerable property from her. Two wills were made before the one in question. One C. W. Lomas drew the first and Mr. J. T. Whitenack, who acknowledged the last will, drew the second, and appellant drew the last will which is under consideration here. Three of the grandchildren of Mrs. Hall, namely, *E. S. Hall, May Harrington,* and *Maud Bren,* are contestants, each having received by the terms of the proposed will $50. It appears that the prior wills gave the contestants larger legacies than the propounded will. It also appears from the evidence, and the court below found,

that the will bears evidence that as originally drawn the amount bequeathed to grandchildren was not inserted at the time of its writing but afterwards.    It is conceded that after the death of Mrs. Hall the appellant burned ·the two wills drawn prior to the last.

There is considerable conflict in the evidence on the part of the appellant respecting due execution of the proposed will.    This conflict obviously arises from confusion of the facts respecting execution and parties present when the second will was executed, with what occurred and who were present when the last will was signed.    It was stipulated that the testimony taken in county court should be received and treated as testimony taken upon the trial in the circuit court.    The testimony is reviewed and discussed in the opinions of both the county and circuit courts.    On the part of the contestants the evidence of Nora Elkey, a witness to the will, is clear, specific, and positive to the effect that the will was not properly executed and was not in fact the will of Eliza J. Hall, deceased.    Nora Elkey testified that she and Fay signed the last will as witnesses, but that Mrs. Hall had not signed it or made her mark; that she and Fay signed because appellant asked them to sign as witnesses; that after Fay and *Hall* went away and on the same day she read the whole will to Mrs. Hall with the exception of a clause therein relating to oil stock; that at that time Mrs. Hall had not signed the will either by signature or mark; and that the amount to go to the grandchildren was not written in the will, but that after the name of each grandchild the amount was left blank; that afterwards she saw the will in appellant's bureau drawer and that it did not then bear Mrs. Hall's name or mark; that the first time she knew or saw Mrs. Hall's name attached to the will was when it was produced in county court; and she states positively that when she and Fay signed as witnesses Whitenack was not present nor was Mrs. Hall's name or mark attached and that the blanks in

the will existed, and that Mrs. Hall never signed the will or acknowledged it as her will before them.    Mr. Whitenack testifies he never drew or witnessed the execution of the second will, *Mr. Hall* and Nora Elkey testified that he did. Whitenack also testifies that *Hall* was present when he witnessed the last will, while Fay and *Mr. Hall* both say that *Hall* was not present when the will in question was executed. The county court in its opinion, in reviewing the evidence, among other things said:

"The sharp conflict of testimony is readily observed.    *Mr. Hall,* Fay, and Miss Elkey say *Hall* was not present when the will was executed, Mr. Whitenack says he was.    Mr. Fay says Mr. Whitenack had the will with him when they entered the house, Mr. Whitenack says testatrix gave it to him.    Mr. Fay says the will was executed in the sitting room, Mr. W. says it was in the bedroom.

"Miss Elkey says the so-called second will was executed in the bedroom and the last in the sitting room.    Mr. W. says the last was executed in the bedroom and admits that he signed some paper at another time in the sitting room.

"There were undoubtedly two wills made not far apart subsequent to the Lomas will.

"I believe all of these witnesses, who are all absolutely disinterested, are honestly trying to tell the truth, but they are sadly mixed as to those two wills.

"I think that Mr. Fay, who only witnessed one paper and whose signature is affixed to this last will, is not mistaken when he says it was executed in the sitting room in May. If that is so, it is not the transaction Whitenack refers to."

The court below concluded in its opinion that the testimony of Mr. Whitenack and what he recalled about the execution of Mrs. Hall's will was the so-called second will and not the will propounded in the present case.    There is also other conflicting evidence between the witnesses on the part of the appellant which tends to show that the will in question here was not duly executed, but it is unnecessary to prolong this opinion by a discussion of the evidence.    It is clear from the opinion of the court below that the learned judge who wrote

the opinion realized the force of recitals in the attestation clause of the will.　He said:

"The recitals in the attestation clause show due execution of the will and there is strong presumption of the truth of these recitals.　Wills should not be lightly set aside where there is no question of mental incompetency or undue influence.　The presumption of the attestation clause should prevail unless overcome by clear and satisfactory evidence."

The judge then proceeds to show that the presumption had been fully overcome, and concluded that even if the burden of proof were upon the contestants they had fully discharged that burden.

A careful examination of the record convinces us that the findings of the court below are supported by the evidence and cannot be disturbed by this court.

*By the Court.*—Judgment is affirmed, with costs to respondents.

A motion for a rehearing was denied, without costs, except clerk's fees and amount paid for printing brief, on April 30, 1918.